# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MINGO LOGAN COAL COMPANY,**
**Employer Below, Petitioner**

**v.) No. 24-ICA-508**      (JCN: 2024024558)

**ANDREW REYNOLDS III,**
**Claimant Below, Respondent**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mingo Logan Coal Co. ("MLC") appeals the November 22, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Andrew Reynolds III, timely filed a response.[1] MLC did not reply. The issues on appeal are whether the Board erred in reversing the claim administrator's order, which denied the claim and authorization for MRIs of the left shoulder and lumbar spine, and whether the Board erred in also granting temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming, in part, vacating, in part, and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Reynolds alleged that he sustained a workplace injury on July 17, 2024, while employed by MLC as a scoop operator. According to Mr. Reynolds, he was lifting block, the block became caught on a strap, and while attempting to free the strap, his shoulder and back sustained injuries. Mr. Reynolds was seen at MedExpress Urgent Care on July 17, 2024, where he was treated by Lisa McCloud, NP. Mr. Reynolds reported that he experienced pain in his left shoulder and lower back after he was injured while lifting block at work that morning. Mr. Reynolds underwent x-rays of his left shoulder and lower back. The x-ray of the left shoulder revealed no acute bone deformity, and the x-ray of the lower back reported abnormal alignment with no acute lumbar vertebral compression deformity by plain films. NP McCloud's impression was strain of the left shoulder and sprain of the lumbar spine, for which she prescribed medication and recommended a referral to an

---

[1] MLC is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Reynolds is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

orthopedic surgeon. A Worker's Compensation Duty Form was completed indicating that Mr. Reynolds could return to modified duty on July 22, 2024, with no bending, kneeling, pulling, pushing, reaching, carrying, lifting, walking, sitting, or standing.

Mr. Reynolds completed an Employees' and Physicians' Report of Occupational injury or disease on July 17, 2024, which alleged that he sustained injuries to his shoulder and back at work on July 17, 2024, while lifting block after it became caught in a strap. In the physician's section of the form, NP McCloud stated that Mr. Reynolds sustained an injury to his lower back and left shoulder as a direct result of an occupational injury, but that it did not aggravate any prior injury or disease.

On July 18, 2024, Mr. Reynolds was examined by Dr. Luis Bolano at Scott Orthopedic. Dr. Bolano noted that Mr. Reynolds felt a pop when he was injured and had weakness with lifting, along with pain and loss of range of motion. Dr. Bolano's assessment was left biceps tendon strain and lumbar strain. He further indicated that the exact diagnosis would depend on additional testing as well as the evolution of the signs and symptoms of disease, and he ordered physical therapy. Dr. Bolano noted that Mr. Reynolds could return to work on light duty with restrictions.

On July 22, 2024, Mr. Reynolds was examined by Dr. Robert McCleary at Logan Regional Orthopedics and Associates. Dr. McCleary noted that NP McCloud referred Mr. Reynolds for left shoulder and lumbar issues after being injured at work on July 17, 2024, while lifting block. Dr. McCleary reported that Mr. Reynolds' pain was aching, with pain in the lower back radiating to the left buttock. Dr. McCleary found limited range of motion in Mr. Reynolds' left shoulder with pain and tenderness. Dr. McCleary assessed lumbar sprain and left shoulder sprain, and recommended a course of physical therapy, a lumbar MRI, and a left shoulder MRI. He supplied Mr. Reynolds with an off-work slip through September 22, 2024.

On August 6, 2024, the claim administrator issued an order rejecting the claim on the basis that Mr. Reynolds did not sustain an injury in the course of and as a result of his employment. By separate order dated the same date, the claim administrator also denied Dr. McCleary's requests for MRIs of the left shoulder and lumbar spine without contrast based on the denial of the claim. Mr. Reynolds protested these orders.

Mr. Reynolds was deposed on September 16, 2024, and testified that he sustained injuries to his shoulder and lower back on July 17, 2024, while he was lifting block for MLC at the direction of his section boss, Dale Oliver. Mr. Reynolds testified that he sought treatment from Dr. McCleary because Dr. Bolano stated that he was unable to examine Mr. Reynolds' lower back. Mr. Reynolds denied having any prior injuries, treatment, or diagnostic testing involving his left shoulder or lower back prior to July 17, 2024. Mr. Reynolds also denied complaining of shoulder pain prior to beginning his shift on the day he was injured.

Mr. Reynolds testified that on August 19, 2024, he asked Dr. McCleary to release him to return to work because he was comfortable enough to resume work and he needed to provide for his family. Mr. Reynolds testified that Dr. McCleary released him to return to work on August 20, 2024.

MLC provided one unnotarized signed statement and six notarized affidavits from other employees of MLC recounting the events from July 17, 2024. Dale Oliver, a section boss for MLC, completed a declaration dated October 21, 2024, stating that before work on July 17, 2024, Mr. Reynolds said he had shoulder pain. Kevin Williams, a continuous miner coordinator for MLC, completed an affidavit dated October 21, 2024, declaring that prior to work on July 17, 2024, Mr. Oliver told him that Mr. Reynolds was complaining of left shoulder pain. Joe Staton, an employee of MLC, completed an affidavit on October 24, 2024, stating that before work on July 17, 2024, he heard Mr. Reynolds tell Mr. Oliver that he had left shoulder pain. Kyle Brown, a day shift foreman for MLC, completed an affidavit dated October 21, 2024, stating that before work on July 17, 2024, he was told that Mr. Reynolds complained of left shoulder pain. Steven Bailey, assistant day-shift foreman for MLC, completed an affidavit dated October 21, 2024, stating that during a meeting to discuss Mr. Reynolds' alleged injury, no employees of MLC tried to dissuade Mr. Reynolds from filing a workers' compensation claim. Jonathan Hensley, mine manager at MLC, completed an affidavit dated October 21, 2024, stating a customary meeting was held after Mr. Reynold's alleged injury. According to Mr. Hensley, Mr. Reynolds did not complain of back symptoms at the meeting, and no employees of MLC tried to dissuade Mr. Reynolds from filing a workers' compensation claim. Finally, Jerry Mann, III, a safety manager for MLC, completed an affidavit dated October 21, 2024, stating that a customary meeting was held after the alleged injury where he was told that Mr. Reynolds complained of shoulder pain before work that day. Mr. Mann denied that employees of MLC tried to dissuade Mr. Reynolds from filing a workers' compensation claim. Mr. Mann also said that Mr. Reynolds denied that he complained of left shoulder symptoms prior to work on July 17, 2024.

On November 22, 2024, the Board reversed the claim administrator's orders, which denied the claim and denied authorization for MRIs of the left shoulder and lumbar spine. The Board found that Mr. Reynolds had established by a preponderance of credible evidence that he sustained injuries to his left shoulder and lower back in the course of and resulting from his employment on July 17, 2024. The Board noted that Mr. Reynolds consistently reported the mechanism of the injury on his workers' compensation form, to medical providers, and during his deposition, and that the record contained no evidence of prior medical treatment or pre-injury diagnosis related to the injured body parts. The Board explained that MLC's statements and affidavits from other employees did not diminish Mr. Reynolds' credibility or discredit the diagnoses related to his injury. The Board further found that an MRI of the left shoulder and an MRI of the lumbar spine were reasonable and necessary treatments for the injuries, and that Mr. Reynolds was entitled to TTD

benefits from July 18, 2024, through August 19, 2024, based on the record. MLC now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, MLC argues that the Board erred in concluding that the medical evidence established that Mr. Reynolds suffered injuries in the course of and resulting from his employment. MLC also asserts that the Board erred in concluding that Mr. Reynolds' representations credibly established that he suffered those injuries in the course of his employment. Finally, MLC contends that the Board erred in ordering payment of TTD benefits.

In order for a claim to be held compensable, three elements must coexist: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, the claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* W. Va. Code § 23-4-3 (2005) and W. Va. Code of St. R. § 85-20-9 (2006).

Here, the Board was not clearly wrong in determining that the medical evidence established that Mr. Reynolds sustained a left shoulder sprain/strain and lumbar sprain/strain in the course of and resulting from his employment. As the Board noted, Mr. Reynolds consistently alleged that he was injured while lifting block at work. He reported the injury on the Report of Occupational Injury, to medical providers, and during his

deposition. The Board noted that NP McCloud diagnosed an occupational injury that did not aggravate a prior injury or disease, and that other medical providers diagnosed a lumbar sprain/strain and left shoulder sprain/strain. The Board found that NP McCloud, Dr. Bolano and Dr. McCleary all diagnosed Mr. Reynolds with left shoulder sprain/strain and lumbar sprain/strain as a result of the injury he sustained on July 17, 2024. The Board further explained that while MLC maintained that Mr. Reynolds complained of shoulder pain prior to beginning his shift, "the record contain[ed] no evidence of prior medical treatment whatsoever, let alone a pre-injury diagnosis related to the injured body parts." Based on the foregoing, we conclude that the Board's finding that the medical evidence established that Mr. Reynolds sustained a shoulder sprain/strain and lumbar sprain/strain in the course of his employment is supported by substantial evidence.

Further, we conclude that the Board was not clearly wrong in finding that Mr. Reynolds's testimony and other representations were credible and reliable. Although MLC argues that there was no credible, objective evidence of any injury and that the Board relied solely on Mr. Reynolds' statements regarding his claim, the Board found that MLC's evidence introduced through a statement and affidavits from employees did not diminish Mr. Reynolds' credibility or discredit the diagnoses from the medical providers. Finding no error, we defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence. . . .").

Accordingly, based on the evidence of record, the Board approved Dr. McCleary's request for MRIs of the left shoulder and lumbar spine, and we do not find the Board was clearly wrong in doing so. As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, finding Mr. Reynolds credible, holding the claim compensable for left shoulder sprain/strain and lumbar sprain/strain, and approving MRIs of those body parts.

MLC also argues that West Virginia Code § 23-4-7a(e) (2005) bars Mr. Reynolds from receiving TTD benefits after Dr. Bolano released him to return to work on light duty.[2]

---

[2] W. Va. Code § 23-4-7a(e) provides, in pertinent part:

In all cases, a finding by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates

MLC also asserts that the issue of whether it could accommodate the light duty restrictions was never adjudicated. While MLC's argument, premised on its allegation that the claim should not have been ruled compensable, is misplaced, we find error, nonetheless. The Board found that Mr. Reynolds was entitled to TTD benefits from July 18, 2024, through August 19, 2024. However, the Board noted that the only issues Mr. Reynolds protested on appeal were whether his injury was compensable and whether the MRIs of his left shoulder and lumbar spine should have been approved.

After review, it is undisputed that Mr. Reynolds protested the claim administrator's orders that rejected the claim and denied the MRIs. Because the claim was rejected, the claim administrator had no reason to address TTD benefits. Consequently, TTD benefits were not protested, and the only issues properly before the Board were the claim's compensability and the MRIs. Thus, we conclude that the Board was premature in considering the issue of TTD benefits as MLC correctly notes that the issue of whether it could accommodate light duty restrictions was never adjudicated. Instead, the Board should have remanded the issue in a protestable order. *See also Spartan Mining Co. v. Burgess*, No. 24-ICA-485, 2025 WL 1607499, at \*4 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (finding that the Board properly remanded to the claim administrator to determine whether TTD benefits should be awarded due to the compensable injury). Because the issue of TTD benefits was not addressed in the orders protested, the Board lacked jurisdiction to award the benefits. For that reason, we must vacate the Board's award of TTD benefits and remand the issue to the Board with directions to enter an order remanding the issue of TTD benefits to the claim administrator.

Accordingly, we affirm, in part, and vacate, in part, the Board's November 22, 2024, order. We remand this matter to the Board for entry of an order consistent with this decision.

Affirmed, in part, Vacated, in part, and Remanded with directions.

**ISSUED:** August 6, 2025

---

the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work.

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White